UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80734-CIV-RYSKAMP/SELTZER

EMERGING VISION, INC., a New York
corporation, and COMBINE BUYING
GROUP, INC., a New York corporation,

        Plaintiffs,

vs.

NEIL GLACHMAN, individually,
COMBINE OPTICAL MANAGEMENT
CORPORATION, a Florida corporation,
OPTICAL OPPORTUNITIES, LLL, a
Florida limited liability company,
NATIONAL OPHTHALMICS CORP.,
a Florida corporation, OCULAR INSIGHT,
INC., a Florida corporation, VISUS,
L.L.C., a Florida limited liability company,
SPECS 2 SEE, LLC, an inactive Florida
limited liability company, and JAMES
LASHENICK, an individual,

        Defendants.
_____/

<u>REPORT AND RECOMMENDATION</u>

THIS CAUSE is before the Court on Plaintiffs' Motion for Temporary Restraining

Order (DE 5) without notice to Defendants[1] and the matter having been referred to the

undersigned Magistrate Judge[2] pursuant to 28 U.S.C. § 636 and the Magistrate Rules of

the Local Rules for the Southern District of Florida.  For the reasons set forth below, the

_____

[1]  The record does not reflect that Defendants have yet been served with process
or that they are aware of the filing of this action or the instant Motion.

[2]  The motion was originally referred to Magistrate Judge Ann E. Vitunac (DE 6).
Upon Judge Vitunac's recusal on June 24, 2010, the matter was reassigned to the
undersigned.  (DE 7).

undersigned RECOMMENDS that Plaintiffs' Motion be DENIED.

BACKGROUND

Plaintiff Emerging Vision, Inc. ("EVI") is a publically traded diversified holding company with interests in franchising, specialty retail, group purchasing organizations, and healthcare.  EVI operates and franchises nearly 140 retail optical stores under multiple brand names.  Plaintiff Combine Buying Group, Inc. ("CBG") is a wholly owned subsidiary of EVI.  CBG provides independent optical retailers with vendor discounts on wholesale optical goods, supplies, equipment, and services.

Defendant Neil Glachman was (and allegedly is) the sole shareholder, president, and director of Defendant Combine Optical Management Corporation ("COMC"), a Florida corporation located in Boca Raton, Florida.  After the parties entered into an Asset Purchase Agreement and an Employment Agreement (described below), Glachman became the president of Plaintiff CBG; he was responsible for the day-to-day operations of the company.  According to Plaintiffs, Glachman also has an ownership interest and/or is a officer and director of various corporations and is a managing member of several limited liability companies, including Defendants Optical Opportunities, LLC, National Ophthalmics Corp., Ocular Insight, Inc., Visus L.L.C., and Specs 2 See, LLC (the "Glachman Entities").  Defendant James Lashenick (allegedly) provided bookkeeping services to Plaintiff CBG and to other companies, including Defendant COMC and the Glachman Entities.  Plaintiffs allege that Lashenick made or altered bookkeeping entries to conceal Glachman's diversion of funds.

On or about September 29, 2006, Plaintiffs EVI and COM Acquistion, Inc. (the former name of CBG) and Defendants Glachman and COMC entered into an Asset

2

Purchase Agreement.  Under this Agreement, Defendants agreed to sell, and Plaintiffs agreed to buy all of COMC's tangible and intangible assets, including COMC's confidential business information, customer list, accounts receivables, and copies of records and data maintained on its computer systems.   The Asset Purchase Agreement contained several restrictive covenants whereby Glachman and COMC (and its respective officers, directors, shareholders, employees, agents, affiliates or subsidiaries) agreed for a five-year period (1) not to solicit or attempt to solicit COMC's or Plaintiffs' present, future, or prospective customers or employ or solicit CBG's employees (non-solicitation clauses); (2) not to disclose COMC's or Plaintiffs' proprietary information, trade secrets, or other confidential information (non-disclosure clause); and (3) not to engage in any business which is the same or similar to the business of COMC (non-competition clause).

Contemporaneous with the execution of the Asset Purchase Agreement, EVI and Glachman also entered into an Employment Agreement, whereby EVI hired Glachman as the president of CBG.  As part of that Agreement, Glachman agreed to "devote his best efforts and his full business time and attention to the performance of services customarily incidental to such offices and to such other services as may be reasonably requested by the CEO."  Compl.  ¶ 31.  Additionally, the Employment Agreement provided that except upon prior written consent of the Board and except for passive investments in non-optical related businesses, Glachman would not accept any other employment, serve on the board of directors of any other company (with certain exceptions such as civic, educational and charitable organizations), or engage, directly or indirectly, in any other business activity (whether or not pursued for pecuniary advantage) during his term of employment. Additionally, Glachman agreed that during the term of his employment and for twelve

months thereafter he would not use (other than in the performance of his duties with CBG) or disclose any confidential information concerning the business, clients, affairs, or other trade secrets of the company, and he would not  "either on his own account, or directly or indirectly in conjunction with or on behalf of any person, firm, or entity . . . carry on or be engaged, concerned or interested in, or devote any material time to the affairs of, any trade or business engaged in, by the Company . . . ." Id. ¶ 35.

Plaintiffs allege that Glachman has and is participating in the management of other corporations and limited liability companies (the "Glachman Entitites") in the same industry and business as Plaintiffs in violation of the parties' Agreements. They also allege that Glachman is using confidential information (including CBG's customer list) and is using CBG's other assets and employees in operating his other entities.  Additionally, Plaintiffs allege that Glachman and COMC are misappropriating CBG's funds.  By way of example, Plaintiffs contend that Glachman has used COMC to prosecute lawsuits to collect receivables owned by CBG, has provided return payment envelopes to CBG customers addressed to COMC to induce the customers to make payments to COMC, and has deposited customer checks into the accounts of COMC.  Plaintiffs further contend that Glachman has attempted to conceal and continue his activities by misdirecting mail from CBG's offices to that of his attorney and then to his home.

As represented in the Complaint, on June 10, 2010, Plaintiffs terminated Glachman's employment for cause, including the wrongdoings set forth above and breaches of the Employment Agreement.  In the instant Motion, however, Plaintiffs state that Glachman's employment is only "stayed" pursuant to a "peculiar" term in the Employment Contract.  Pursuant to that provision, Plaintiff EVI is required to continue to

4

pay Glachman "the salary, benefits, bonus and other compensation to which he is entitled . . . until the decision of a court of competent jurisdiction . . . shall have rendered with respect to the issue of whether [Glachman's] termination for cause was proper."  Compl. Ex. B. § 4(f).

Based on Glachman's conduct (as described above), Plaintiffs filed a "Verified Complaint," asserting the following claims:  breach of the Asset Purchase Agreement; fraudulent inducement; breach of the Employment Agreement; breach of fiduciary duty; aiding and abetting breach of fiduciary duty; violation of the Computer Fraud and Abuse Act; conversion; and accounting.  They now seek an *ex parte* temporary restraining order and request that the Court:

- prohibit Defendant Glachman from engaging in any employment, management, or operation of any business during the pendency of this lawsuit;

- prohibit Defendants Glachman and COMC, and those acting in direct and/or active concert, from using CBGs confidential business information;

- require all Defendants to return CBG's business records and other information without retaining any copies thereof;

- prohibit Defendants from altering or destroying the business records and other assets of the Glachman Entities and COMC;

- prohibit Defendants from dissipating (including the withdrawal of funds from applicable bank and other accounts), transferring, assigning, pledging, encumbering or disposing of any of the assets of COMC or the Glachman Entities and impose a constructive trust over all the assets of such entities, as well as the revenues and profits such entities derive;

- prohibit Defendants from interfering with the business activities of EVI and/or CBG, including tampering with its mail, accepting payments belonging to CBG, selling or settling its legal claims, and/or disparaging CBG and/or EVI to their respective customers or

otherwise contacting their customers.

<u>LAW AND ANALYSIS</u>

To obtain a temporary restraining order, a party must demonstrate: "(1) [that there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest."[3] <u>Schiavo ex rel. Schindler v. Schiavo</u>, 430 F.3d 1223, 1225-26 (11th Cir. 2005); <u>accord</u> <u>Seigel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*).

Before addressing whether Plaintiffs have met this four-prong showing, however, the Court must first consider whether Plaintiffs have shown adequate justification for failing to give notice to the Defendants.  A court may issue a temporary restraining order <u>without notice</u> to the adverse parties or their attorneys <u>only</u> if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A) and (B).

To obtain *ex parte* relief, a party must strictly comply with these requirements.  They

---

[3]  The standards of review for a temporary restraining order and a preliminary injunction are the same.  <u>United States v. Metro. Dade County, Fla.</u>, 815 F. Supp. 1475, 1477 (S.D. Fla. 1993) (Highsmith, J.).  "The primary difference between the entry of a temporary restraining order and a preliminary injunction is that a temporary restraining order may be entered before the defendant has an adequate opportunity to respond, even if notice has been provided."  <u>Textron Fin. Corp. v. Unique Marine, Inc.</u>, No. 08-10082-CIV, 2008 WL 4716965, at *5 (S.D. Fla. Oct. 22, 2008) (Simonton, M.J.).

"are not mere technicalities, but establish minimum due process." Thompson v. Ramirez, 597 F. Supp. 726, 726 (D.P.R. 1984); see also American Can Co. v. Mansukhani, 742 F.2d 314, 324 (7th Cir. 1984) ("The specific requirements of Rule 65(b) are not mere technical niceties."). The "stringent restrictions" of Rule 65 recognize that "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 438-39 (1974); see also American Can, 742 F.2d at 324 ("The procedural hurdles of Rule 65 are intended to force both the movant and the court to act with great care in seeking and issuing an *ex parte* restraining order.") For that reason, *ex parte* restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." Granny Goose, 415 U.S. at 439.

"It is well established under federal law that a temporary restraining order is an emergency remedy which should only be issued in exceptional circumstances." Zedon v. Pickrell, 338 F. Supp. 2d 1093, 1094-95 (D.N.D. 2004); see also Levine v. Camcoa, Ltd., 70 F.3d 1191, 1194 (11th Cir. 1995) (Hill, C.J., concurring) ("An *ex parte* temporary restraining order is an extreme remedy to be used only with the utmost caution."). This stringent scrutiny "is particularly warranted in cases such as this, where the Defendants are unaware that judicial proceedings have been commenced and the relief [Plaintiffs] request is drastic."[4] Dent Zone Network, L.L.C. v. Heritage Admin. Co., Inc., No. 4:03-cv-195, 2003

---

[4] In addition to the other relief requested in the instant Motion, Plaintiffs are seeking to have the Court immediately freeze all assets of all Defendants, including their bank accounts, and to impose a constructive trust over the assets of Defendant COMC and the other Glachman Entities.

WL 21183706, at *1 (E.D. Tex. May 21, 2003).

There are "very few circumstances justifying the issuance of an *ex parte* TRO."

Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). Courts have

granted a temporary restraining order "where notice to the adverse party is impossible

either because the identity of the adverse party is unknown or because a known party

cannot be located in time for a hearing."[5] Id. Courts have also recognized "a very narrow

band of cases in which *ex parte* orders are proper because notice to the defendant would

render fruitless the further prosecution of the action." Id. (citing American Can, 742 F.2d

at 322). By way of example, "when a party threatens imminent destruction of the disputed

property, its removal beyond the confines of the state, or its sale to an innocent third party

giving the defendant notice of the application for an injunction could result in an inability

to provide any relief at all." Adobe Systems, Inc. v. South Sun Prods., Inc., 187 F.R.D.

636, 640 n.3 (S.D. Cal. 1999) (internal quotation marks omitted).

To meet the first requirement of Rule 65(b) for *ex parte* injunctive relief, Plaintiff's

Verified Complaint[6] or affidavits must contain specific facts clearly showing "that immediate

---

[5] Plaintiffs here do not suggest that they are unable to provide notice to Defendants. Indeed, it appears that Plaintiffs and their attorney have been in contact with Glachman's attorney. See Raffanello Decl. (Ex. B, DE 5-5) attaching June 15, 2010 and June 16, 2010 correspondence between Plaintiffs' attorney and Glachman's and/or COMC's attorney pertaining to the return of Glachman's purported personal computer (and other property) from CBG's offices and Spina Decl. (Ex. C, DE 5-6) attaching letter from EVI and CBG's Chief Executive Officer to Glachman's and/or CBG's attorney pertaining to his representation of these Defendants.

[6] Plaintiffs Complaint purports to be "Verified"; yet, it contains no oath or affirmation. However, it is signed by Plaintiffs' attorney. Under Federal Rule of Civil Procedure 11, by signing a pleading (or other document) presented to a court, an attorney certifies, *inter alia*, that "the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation."

and irreparable injury, loss, or damage will result to [Plaintiffs] before [Defendants] can be heard in opposition." See Fed. R. Civ. P. 65(b)(1)(A).  Plaintiffs contend that they will be irreparably harmed if an *ex parte* restraining order is not issued because "Glachman continues (despite the stay of his termination) to contact EVI's and CBG's customers and solicit their business on behalf of the Glachman Entities, continues to embezzle funds belonging to CBG through Combine Optical Management, and continues to use CBG's confidential business information."[7]  Motion at 15 (DE 5).

        The undersigned has throughly reviewed Plaintiffs' Complaint and the affidavits submitted in support of the instant Motion and finds that they are totally devoid of any specific facts to support the contention that Glachman or the Glachman Entities continue to engage in the conduct alleged above.  By way of example, Plaintiffs do allege in the Complaint that "as a result of his ownership of Defendant Combine Optical Management and through his employment as President of CBG, Glachman has had access to valuable confidential business information," Compl. ¶ 36, and that he "is improperly trading upon and utilizing the confidential information, including the Customer List, that belongs to CBG."

_____

Fed. R. Civ. P. 11(b)(3).  For purposes of this Motion, therefore, the undersigned will deem Plaintiffs' Complaint "Verified."

    [7]  Plaintiffs also contend that they are entitled to a presumption of irreparable harm. The undersigned is cognizant that under Florida law, "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j). While this presumption may satisfy the  "irreparable injury" requirement of the four-prong test for obtaining an injunction, the undersigned does not believe that such a presumption will satisfy Rule 65(b)(1)'s requirements of showing irreparable injury (and a need for *ex parte* relief) by specific facts in an affidavit or verified complaint. See Adobe Systems, 187 F.R.D. at 638, 643 (court denied *ex parte* temporary restraining order application where the plaintiff had not satisfied Rule 65(b), notwithstanding that pursuant to the underlying substantive copyright law, the plaintiff may have been entitled to a presumption of irreparable injury).

Compl. ¶ 37.   They further allege that "upon information and belief, Glachman utilized portions of the Confidential Information, including without limitation, the customer lists of CBG in operating the Glachman Entities and Combine Optical Management."  Compl. ¶ 50. However, in neither the Complaint or any affidavit[8] do the Plaintiffs set forth any facts supporting these conclusory allegations.   They have not identified a single instance of Glachman contacting any CBG customer after his termination.  And although Glachman may have had access to CBG's confidential business information during his employment, Plaintiffs have not identified any use of such information by COMC, Glachman, or the Glachman Entities, either before or after Glachman's termination.

With respect to Glachman and COMC's purported embezzlement of funds, Plaintiffs have alleged that "[u]pon information and belief, Glachman directed certain customers of CBG to make their payments to Combine Optical Management and thereafter misappropriated such funds by depositing these checks into the accounts of Defendant Combine Optical Management and/or cashing such checks." Compl. ¶ 53.  Plaintiffs also allege that "upon information and belief, Glachman caused checks that certain customers mistakenly made payable to Combine Optical Management to be deposited into the

_____

[8] With the exception of the declaration of Plaintiff's counsel (discussed *infra)*, the only declaration submitted pertaining to Glachman or COMC's conduct is that of Richard Vardaro, an employee of EVI  (Ex. A, DE  5-1).  Vardaro relates Glachman's attempt to have CBG's mail forwarded after his termination.  Additionally, attached to his Declaration are pictures that depict: a telephone in CBG's offices showing that lines of various other business entities were routed to that telephone; bank deposit stamps for COMC and two of the Glachman Entities; an inner panel of mailboxes, purportedly demonstrating that some of the Glachman Entities were receiving mail at CBG's offices; binders purportedly containing business records of some of the Glachman Entities; and a stack of unidentified checks that CBG received on or about June 11, 2010, after CBG countermanded Glachman's forwarding order.   Nothing in this Declaration addresses Glachman's or COMC's alleged continued use of CBG's confidential business information or customer list.

accounts of Combine Optical Management and/or cashed such checks." Compl. ¶ 54. Again, Plaintiffs have failed to support these allegations with specific facts in the Complaint or by affidavit, nor do such allegations show that such activity is continuing.

Additionally, Plaintiff's allege that "Glachman has caused Combine Optical Management, an entity that had or should have had no ongoing business interests (other than winding up its affairs) after September 29, 2006, to initiate and prosecute numerous lawsuits to collect on receivables that are owned by CBG." Compl. ¶ 52.  The Complaint does not elaborate further on these lawsuits.  In an attempt to support this allegation, Plaintiffs, however, have submitted the declaration of their attorney, Susan E. Raffanello (Ex. B, DE 5-5), which merely states that various exhibits are attached.  One of these exhibits consists of the dockets sheets for approximately thirteen or fourteen lawsuits brought by Defendant COMC from 2008 to 2010, none of which were commenced after Glachman's June 10, 2010 termination.  Moreover, from the names of the defendants appearing on the docket sheets, it appears that they had some relationship to the optical industry; however, the docket sheets do not reflect the subject matter of the lawsuits, much less that they were for the collection of receivables.[9]  Accordingly, the undersigned cannot

---

[9]  On June 14, 2010, Glenn Spina, the Chief Executive Officer of both EVI and CBG, wrote to Glachman's attorney (who filed these lawsuits) reminding him that all receivable due after July 31, 2006, had been assigned to CBG.  Spina also instructed  the attorney not to prosecute claims using COMC as a nominee or proxy for CBG and not to use such lawsuits to aid and abet Glachman and COMC in misappropriating CBG's choses in action. Spina has not received any response from the attorney or Glachman.  See Spina Decl. (Ex. C, DE 5-6).  Even assuming that Glachman is continuing to bring lawsuits in COMC's name and further assuming that the purpose of these lawsuits is to collect CBG's receivables, the undersigned cannot find that such results in an immediate and irreparable injury to Plaintiffs.  If these allegations are proven true, Plaintiffs can be compensated by money damages for any receivables Defendants wrongfully collect.

conclude that Plaintiffs have satisfied the "irreparable injury" requirement of Rule 65(b)(1)(A).

Yet, even were the Court to find that Plaintiffs' Verified Complaint and affidavits meet Rule 65(b)(1)'s first requirement, Plaintiffs have failed to show a sufficient reason for not affording Defendant's notice.  In the instant Motion, Plaintiffs first argue that they are entitled to a temporary restraining order without notice to Defendants because Defendants "have attempted at every turn to thwart CBG's investigation and its resumption of normal business activities."  Motion at 16 (DE 5). In support of this contention, Plaintiffs state: when terminated, Glachman refused to leave CBG's premises for several hours; Glachman issued a forwarding order to the United States Postal Service to forward CBG's mail to his attorney's law office; Glachman and his attorney have ignored Plaintiffs request for information concerning lawsuits prosecuted in the name of COMC; and Glachman and his attorney have demanded the purported "personal" computer that Glachman used as president of CBG, which contains CBG's confidential business information.  This argument appears to rest on the merits of Plaintiff's claims. A plaintiff, however, "cannot obtain an *ex parte* restraining order by merely pointing to the merits of its claims." Adobe Systems, 187 F.R.D. at 640 n.3 (citing First Tech. v. Depinet, 11 F.3d 641, 652 (6th Cir. 1993)).  "Indeed, such an argument would swallow Rule 65(b)(2)'s requirement that the court consider not only the 'need for a restraining order' but also 'the need for proceeding *ex parte*.'"  Id. (quoting American Can, 742 F.2d at 325).   Accordingly, the undersigned finds this argument inadequate to justify *ex parte* injunctive relief.

The only other justification given for dispensing with notice to Defendants is that based on Glachman's past conduct and Plaintiffs' unspecified "uncovering of additional

evidence and information," Plaintiffs "fear an immediate destruction of records and/or the transfer or dissipation of the business funds and assets of the Glachman Entities and Combine Optical Management if notice is provided before a temporary restraining order is issued."  Motion at 17 (DE 5).

In <u>Adobe Systems</u>, the court rejected a similar argument. In that copyright infringement action, the plaintiffs had sought an *ex parte* restraining order, arguing that if the defendant were to receive notice, it could easily destroy evidence that would show it had copied the plaintiffs' software; they contended that the defendant would simply delete such evidence from its computers.  In finding this argument insufficient to obtain *ex parte* injunctive relief, the court observed:

> [I]n every civil action there is a possibility that a defendant will destroy or conceal evidence once it receives notice that an action has been commenced. . . . The extraordinary remedy of ex parte injunctive relief cannot be justified by merely pointing to the obvious opportunity every defendant possesses to engage in such unlawful deceptive conduct.  Rather, a plaintiff must present specific facts showing that the defendant it seeks to enjoin will likely conceal, destroy or alter evidence if it receives notice of the action.  A plaintiff may satisfy this burden by identifying specific instances where the defendant has destroyed evidence or willfully violated court orders in the past.

187 F.R.D. at 641 (Before obtaining *ex parte* relief, a plaintiff must demonstrate that "the adverse party is likely to take the opportunity for such deceptive conduct."); see also <u>First Tech.</u>, 11 F.3d at 650-51 (ruling that a plaintiff must do more than assert that the defendant would dispose of evidence if given notice; rather, "the applicant [seeking an ex parte restraining order] must support such assertions by showing that the adverse party has a history of disposing of such evidence or violating court orders or that persons similar to the adverse party have such a history").  Here, Plaintiffs have not made (or attempted to make)

any showing that Defendants have destroyed, or are likely to destroy, business records (or other evidence) or that Defendants have dissipated, or are likely to dissipate, their assets.

<u>CONCLUSION</u>

In sum, the undersigned finds that Plaintiffs have failed to meet the "high burden" to justify issuance of a temporary restraining order without notice to Defendants.  <u>See</u> <u>Ameripath v. Wetherington</u>, No. 10-60766-Civ, 2010 WL 1949486 (S.D. Fla. May 14, 2010) (Cohn, J.) (denying *ex parte* motion for temporary restraining order against former employee who allegedly was violating non-competition agreement; court found that movant had not met the "high burden" required to issue temporary restraining order without permitting the defendant to respond).  Because Plaintiffs have failed to meet Rule 65(b)'s "stringent" threshold requirements for obtaining an *ex parte* temporary restraining order, it is unnecessary for the undersigned to address the required four-part showing for a temporary restraining order.  Accordingly, the undersigned hereby RECOMMENDS that the District Court DENY Plaintiffs' *ex parte* Motion for Temporary Restraining Order (DE 5).

Plaintiffs will fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Kenneth L. Ryskamp, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge except upon grounds of plain error or manifest

injustice.  See 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790, 794 (1989).

       DONE AND SUBMITTED in Fort Lauderdale, Florida, this 29th day of June 2010.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Hon. Kenneth L. Ryskamp
United States District Judge

Counsel for Plaintiffs